May it please the Court, Counsel, I'd like to reserve five minutes for rebuttal. Your Honors, Judy Long and Heath Downs should have qualified immunity because there was no clearly established right established by this U.S. Supreme Court that was sufficiently defined that a reasonable jailer in their shoes would have understood that they were violating it. We have a couple of cases that have held that the right to be protected against deliberate indifference to medical and psychological needs includes the right to be protected from suicide risk. And is there some Ninth Circuit case, to your knowledge, that pulls back from that holding? Your Honor, I believe that there are two critical issues, one of which that you're you're addressing, and that is whether any case relied on by the lower court or the plaintiff can constitute controlling clearly established law, and whether that clearly established law was properly defined by the lower court. As to your question, I believe that the U.S. Supreme Court has cases would be considered for... No, no, that's true, but our cases have held that the Supreme Court's law clearly establishes this right, and so insofar as we've held that Supreme Court law is clear, aren't we bound by those precedents? To the extent that it is clearly defined as directed by the U.S. Supreme Court on how a clearly defined law should be defined, yes. I believe that if it's — if the Court is relying on the U.S. Supreme Court. And I guess my other question for you is just how detailed does the Supreme Court's statement have to be? In other words, it can't be at a complete level of generality like deliberate indifference is bad, but it also doesn't have to be at a high level of detail like, you know, in small jails for counties under 100,000 people, this is established. So there's some — something in between. How precise does it have to be in your view? Your Honor, in — based upon the U.S. Supreme Court's decisions that it cannot use a high level of generality, qualified immunity has to be clearly established so that the law can be simply defined as a right to be free from unreasonable or deliberate indifference to medical needs is not sufficient, as the U.S. Supreme Court has said in the Moss and most recently in the Sheehan and the Taylor cases. In — in the lower court, when the Court said it is clearly established that the 14th Amendment protects against deliberate indifference, against serious risk of suicide, that was not sufficient, and that is borne out. Do you think that's inaccurate or just too general? Too general. But not inaccurate. Well, it is inaccurate for purposes of a qualified immunity analysis because it may be a statement of law, just as Fourth Amendment's — the Fourth Amendment prohibits unlawful searches and seizures. But that is not — does not mean that it is accurate for purposes of the clearly defined law. So what else has to be added to it besides protecting from deliberate indifference to the risk of suicide? What — what more needs to be added, in your view? Well, based upon the Moss case, as well as the Sheehan and the Taylor cases that have just come out in the last couple of months from the Supreme Court, in this — what you look to is the particular circumstances and context — I'm asking you specifically what it is that you think needs to be stated. If we were — if you were writing for us, what would you say has to be added to that phrase, deliberate indifference to the risk of suicide, pulling custody? What else needs to be added? In this particular case, Your Honor, I could say that where an inmate is medically cleared and not on suicide watch, non-medical jail staff must rescreen to identify suicidal tendencies to establish an inherent suicide risk. Is that law established? Because that is what was the context that Long and Downs met. Well — You're almost saying that — Go ahead. No, please. That there has to be a medical determination of a suicide risk before a jailer can be put on notice. Is that what — is that what you're saying? Your Honor, I'm not sure if I understand your question. I'm not saying that there is required that there be medical screening for suicide because the Supreme Court in Taylor said that there isn't that. That is not the law, and it wasn't the law in 2009. What I'm saying is for Downs and Long to be not given — granted qualified immunity, there had to have been a right established at that time that given those circumstances that this individual was screened, medically cleared, not on suicide watch, that it would have put jail staff on notice that it was their duty to diagnose, determine, and recognize suicidality and then take proper action, whether it is medical care or referral. And that was not the law. One of the issues I have, I think, with your recitation is that it takes the facts in the light most favorable to your clients. But in determining qualified immunity to get past this stage, don't we have to take the facts most favorably to the plaintiff? Your Honor, with all due respect, what I'm stating is the law that would have been applicable in the context — No, but your description of the situation takes — has factual premises underlying it, and those factual premises are not the only possible ways to view the record. Well, I believe that it's undisputed that she was medically cleared. Correct. Which led to Judge Tshima's question as to whether there's a requirement that there be a medical premise or information given to the jailers before they can be held responsible. No, it's just the opposite, because the jail staff should not be in the — have the job of trying to diagnose and determine medical conditions. That's not a — But why is this a medical — why is this a medical condition? If someone came running into the courtroom screaming, I'm going to kill myself, I'm going to kill myself, a reasonable person would be concerned that they might act on that without caring whether it's a medical condition or not a medical condition. I guess I'm not sure I understand why diagnosis comes into the picture. Well, because the risk of suicide or the tendency, or as the Simmons case later said, the acute risk of imminent suicide deal with the right of medical care and treatment. That's how the plaintiff has pled this case. It deals with whether she received proper medical care based upon her mental state. And so for that reason, as it deals with a screening or an identification of suicidal tendencies, that jailers should not be — the courts have not said that the jail should be required to do. In the Taylor case, the U.S. Supreme Court specifically rejected any kind of adequate suicide prevention or screening requirements, and that goes whether it's — and to your question, Judge, that even someone who asserts that they are suicidal, the Supreme Court said that there is not a right, a constitutional right that's been clearly established for that screening procedure to occur. It even rejected other courts that had said — that dealt with — well, it used other courts to reject that by saying that there's no right to be screened for — screened correctly for suicidal tendencies, or rejecting the proposition that the right of detainees to adequate medical care includes an absolute right to psychological screening or to care for or the responsibility to screen every detainee for suicidal tendencies. No one's making a claim like that here, right? Pardon me? No one is making a claim like that here. That's — that's what the plaintiff has alleged, that by — by not recognizing — The plaintiff has not alleged any absolute right to screening or anything like that? What — what — What you read doesn't apply to this case at all. That's not the factual circumstances here. Your Honor, with due respect, the factual circumstances are that, as this Court determined on the deliberate indifference issue, that there were facts or conduct by Ms. Bannister that should have led them to believe that she had suicidal tendencies or a suicidality. That is a screening. That is a determination that a jailor can take. That's not a screening. You're talking about jailors, you know, going — who's got a video of the cell, right, can see what the — what the inmate is doing. You know, is she — is she hanging a sheet over the — over the — some bar — you know, is that not a screening? Just keeping your eyes open. And there's — and the record is disputed on that here. But based upon what they saw or what they were told, then they would have had to have made a determination that they were suicidal risk. Are you saying that based on what they told, they were — they could ignore any other act or conduct by the — by the detainee? Because there was some, according to the defendants, some release. They didn't have to pay any attention to her or any other, I guess, inmate for any other conduct at all. And if they see anything, so what? Is that what you're saying? I mean, because it seems like that's where that takes you. I mean, there was a lot of conduct alleged that happened post the release being given to the — to the jail people. There was the question of the phone call, whether or not the guard heard the phone call, the statements that she was making, the fact that the guards, even despite the release, thought that she was suicidal. Then you look at the video, and I think three times she, you know, attempts her suicide. She is — nobody's looking. I mean, so do you mean to say that once they get the release and there's no — there's no obligation on the guards to look at any other conduct? What I'm saying, for purposes of the qualified immunity, that there has to be a clearly established right that will direct and give indication to those jailers as to what their responsibilities would be in those kinds of circumstances. And in this particular case, under the context, based upon the Moss case and the Taylor and the Sheehan cases, that right has not been clearly defined by the lower court, and it was not precedential based upon the Supreme Court case law. Thank you, counsel. I think we understand your position. Although you've exceeded your allotted time, we'll give you two minutes for rebuttal when the time comes. Good morning. Sean Bailey for the Arizona State of Crystal Bannister. May it please the Court — Could you speak louder, please? Sean Bailey for the Arizona State of Crystal Bannister. This is not a close case. A detainee's right against deliberate indifference to heighten suicide risk was clearly established long before August 2009. Does Taylor affect this analysis at all? The Supreme Court's recent case didn't take — No, Your Honor. Why not? Taylor is very different from this case. This case falls squarely within the Farmer v. Brennan standard. The key there is actual knowledge that triggers the jail staff's duty to do something when they know that an inmate or detainee is actively suicidal. In Taylor, there were no facts that the individual defendant had such knowledge. That was a case that tried to rule that there was a duty to perform a certain kind of suicide screening, independent of whether or not there was actual knowledge of active suicidality. So it's a much tougher case for qualified immunity purposes. Here, this case falls squarely within the Farmer v. Brennan standard that governed this case in the first appeal, that governed Kahn, Kluthier, and dozens of other custodial suicide cases decided by — What is your position on maybe answer to really what Mr. Naylor said is, what is the clearly established right at issue here? How would you define that clearly established right? The definition of the right properly defined is a detainee's right against deliberate indifference to her heightened suicide risk. That is — Isn't that too broad? No, Your Honor. Oh, no, I was going to say too broad, not that it's the wrong standard, but too broad to give a jail deputy notice of what she's supposed to do under that, to protect the inmate's right. It would be too broad if we were asking the Court to rule that the Eighth Amendment's prohibition on cruel and unusual punishments was clearly established, or the Fourteenth Amendment principle that a pretrial detainee is entitled to at least the same treatment as an inmate under the Eighth Amendment, or even maybe the general prohibition on deliberate indifference to serious medical needs. But custodial suicide cases that survive summary judgment and that go to a jury are all factually similar. They all must involve an individual in custody who is displaying heightened suicide risk and jail staff who are aware of that heightened suicide risk. Even more specifically than that, all of these cases generally feature similar facts about how the jail becomes aware — the jail staff becomes aware of the suicide risk. Generally, these cases all involve prior suicide attempts known to the jail staff, agitated, extremely distressed behavior in the hours before the suicide, and or threats of suicide. Our case has all three of those. Kahn and Kluthier had those facts to a degree as well. We cited in our brief 25 custodial suicide cases from 10 different circuits. Many of those cases had similar facts as well. There are many cases decided prior to Crystal Bannister's tragic death in 2009 that had very similar facts to this case. When Downs and Long became subjectively aware that Bannister was actively suicidal, they were on notice in light of Kahn, Kluthier, in light of Elliott from the First Circuit, Gordon from the Fourth, Jacobs from the Fifth, Comstock from the Sixth, Cavalieri and Hall from the Seventh, Greeson and Snow from the Eleventh. There's a long list of these cases with similar facts to this case that put them on notice what they had to do. They had to do something when they became aware of Bannister's heightened suicide risk. I think ultimately it's clear to the court what's happening in this appeal. The Supreme Court has repeatedly said you don't need a case directly on point to defeat a qualified immunity defense. But it has to be pretty close. Well, it has to have specific context that is similar. And there are plenty of cases that do, as I just listed those cases. But they have to be Supreme Court cases. Well, and the Farmer v. Brennan standard, which described how you prove deliberate indifference, is a Supreme Court precedent that all of these cases follow. And that's where the Taylor case went beyond that standard. And if anything, the Taylor opinion issued just a couple of weeks ago helps the Bannister's because the Supreme Court seemed to reaffirm that that actual knowledge standard set forth in Farmer v. Brennan is the touchstone for these cases. What is your best, I'll say, Supreme Court or Ninth Circuit case that sets the standard, the deliberate indifference standard that should govern in a custodial suicide case? Right. Nearly 30 years ago, in Cabrales, this Court ruled that the general prohibition on deliberate indifference to serious medical needs applies to the specific context of custodial suicide. More recently, this Court in Kahn and Clouthier, following Farmer v. Brennan, applying the deliberate indifference standard, ruled that a detainee's right against deliberate indifference to heighten suicide risk was clearly established long before April and August 2005. There is a large volume. Now, there was some, I forgot the exact details, but there's some controversy in the briefs about whether Kahn was clearly established law at the time of this incident, right? Is that right? Right, Your Honor. The important thing about Kahn and Clouthier is that they both ruled that the right in question was clearly established as of 2005. There is an issue about the original opinion in Kahn being decided before Bannister's death, and then with appeals certiorari and then the case being reinstated, the date that appears on the opinion now is 2010. But even if Kahn and Clouthier didn't exist, there are dozens of other custodial suicide cases from the circuits coast to coast that define the right in question in the same terms that this court defined the right in the first appeal and that it defined the right in Kahn and Clouthier. Like I said at the outset, this is not a close case. The Supreme Court has repeatedly said you don't need a case directly on point, and yet the defendants are here and they seem to suggest you need a case that is factually identical. Likewise, the Supreme Court has repeatedly emphasized it is important when dealing with qualified immunity at summary judgment to view the facts in the light most favorable to the party asserting the injury. My colleague said it's undisputed that Bannister was medically cleared. Well, that's not undisputed. I'll tell you why. Because Downs and Long didn't know what the facts said that the jail received, and Bannister's condition deteriorated significantly after he received that fact, that fax. This isn't a case about imposing an obligation to perform some certain kind of screening. This is a case about what jail staff have an obligation to do when they actually know an inmate is actively suicidal. Most significantly, in light of Cabrales, Kahn, Clouthier, and dozens of other custodial suicide cases, the right in question here was clearly established long before August 2009. And yet the defendants are here asking the court to ignore all of those cases, to ignore the fact that those cases fit squarely within the well-traveled path of the Farmer v. Brennan deliberate indifference standard. The defendants are asking the court to go way out on a limb and rule that this case is somehow unique for qualified immunity purposes, to go against what all other courts have done in cases like this. Bannister's death is horribly tragic, but for qualified immunity purposes, this is a routine custodial suicide case. This is nothing like the Taylor case that was reversed fairly recently. I appreciate the court's attention to our arguments. I also want to say sometimes it's hard for my clients to understand why the process takes so long, so we very much appreciate this panel accepting this comeback appeal and scheduling the arguments so quickly. I want to thank you on behalf of my clients for that. Thank you. Thank you, counsel. Mr. Naylor, you have some rebuttal time. Thank you, Your Honor. First of all, if the law that is clearly established, as counsel just pointed out, was Farmer, Farmer states an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation cannot under our cases be condemned as the infliction of punishment. If a person should have been aware of the risk but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk. Also, while Simmons is not precedential for determining clearly established law because it was post this incident, in that case, contrary to what counsel said, that inmate was on suicide watch, and so it isn't a case where you have all suicides where the jail staff knew more. Clothier does not help because in that particular case, you have a medical professional who identified the individual as suicidal and then took away the risk analysis and put them off that, even though they were the medical professionals in that case. And we've briefed that Kahn was not precedential because of the status of that case. Just going back for a second, Judge Graber, you've identified that in the Sheehan case, quoting the Carroll case, the Supreme Court has said, assuming for sake of argument, that controlling circuit precedent could constitute clearly established federal law in these circumstances, where in this, we believe that the Supreme Court has said, you have to look to Supreme Court law, not sister states, some of which have been reversed that plaintiff has already cited to, namely, the Barkas-Taylor case and the Colburn case that was cited by the Supreme Court and rejected. Counsel, your time has expired. Thank you very much. We appreciate the arguments by both counsel. They've been very helpful.
judges: Tashima, Graber, Murguia